Marcie E. Schaap #4660
Joseph D. Amadon #16386
Marcie E. Schaap, Attorney at Law, P.C.
4760 S. Highland Drive   #333
Salt Lake City, Utah 84117
Telephone:     (801) 201-1642
Facsimile:      (801) 272-6350
E-mail:
marcie@marcieeschaap.com
joe@marcieeschaap.com

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| W.S.,<br><br>              Plaintiff,<br><br>       v.<br><br>HILTON DOMESTIC OPERATING COMPANY, INC. and ANTHEM HEALTH PLANS OF VIRGINIA, INC.,<br><br>              Defendants. | **SECOND AMENDED COMPLAINT**<br><br><br>Case No. 2:17-cv-01286-DN<br><br>Judge David Nuffer |

Plaintiff, through its undersigned counsel, complains and alleges as follows:

**PARTIES, JURISDICTION AND VENUE**

1.     IHC HEALTH SERVICES, INC. ("IHC"), operates several hospitals in the Intermountain Area, including INTERMOUNTAIN MEDICAL CENTER ("IMC" or the "Hospital"), in Salt Lake City, Utah.

1

2. Plaintiff, W.S. received medical services from the Hospital on October 5, 2014, through October 9, 2014 ("Dates of Service" herein).

3. W.S. was, at all times relevant hereto, a resident of the State of Utah.

4. W.S. signed a Conditions and Consent Form, designated IHC as his authorized representative for all relevant claims herein.

5. HILTON DOMESTIC OPERATING COMPANY, INC. ("Hilton" herein) is a foreign corporation.

6. Hilton provided an employee benefit plan (the "Plan") for its employees and their beneficiaries.

7. ANTHEM HEALTH PLANS OF VIRGINIA, INC. ("Anthem" herein) is a foreign corporation.

8. Hilton and Anthem shall be jointly referred to herein as the "Defendants."

9. Hilton contracted with Anthem to provide health insurance to Plan participants and beneficiaries.

10. Anthem was, at all relevant times, an agent of Hilton.

11. Anthem was, at all relevant times, the health insurer of the Plan participant and/or beneficiary W.S.

12. Regence Blue Cross Blue Shield of Utah ("BXBS" herein) acted as an agent of Anthem in making health benefit determinations for W.S.

13. This is an action brought by the Plaintiff to collect amounts owed for medical claims which were unpaid by the Defendants which resulted from health care services provided by IHC.

14. This is an action brought under ERISA. This Court has jurisdiction of this case under 29 U.S.C. §1132(e)(1). Venue is appropriate under 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391(c) because the communications during the administrative appeal process took place between the Plaintiff and the Defendants in the State of Utah, and the breaches of ERISA and the Plan occurred in the State of Utah. Moreover, based on ERISA's nationwide service of process provision and 28 U.S.C. §1391, jurisdiction and venue are appropriate in the District of Utah.

15. The remedies Plaintiff seeks under the terms of ERISA are for the benefits due under 29 U.S.C. §1132(a)(1)(B), and for interest and attorneys' fees under 29 U.S.C. §1132(g).

.

## FACTUAL BACKGROUND

### A.  Medical Treatment

16. Plaintiff realleges and incorporates by reference all paragraphs of this Complaint as though fully set forth herein.

17. The treatment W.S. received was due to an emergent condition necessitating emergency services.

18. On October 5, 2014, W.S. presented to IMC's Emergency Department ("ED") via Emergency Medical Services ("EMS") after being found in a parking lot, face down in a pool of blood and vomit.

19. Upon assessment in the ED, trauma protocols were initiated. W.S. was continuously monitored with cardiac monitoring and pulse oximetry. Vital signs were blood pressure 64/39, heart rate 130, respirations 18, temperature 34.4, and oxygen saturations 96% on 15

liters of oxygen per non-rebreather mask. Glasgow Coma Score (GCS) was 14, and he appeared confused. Two large bore intravenous accesses (IVs) were placed, and laboratory studies were obtained. He received two liters of IV fluid boluses secondary to low blood pressures. A Foley catheter was placed. CT of the thoracic spine demonstrated left scapular fracture, rib fractures #6 through #9, and left lower lobar contusion. CT of the lumbar spine was negative. CT of the brain was negative. CT of the abdomen and pelvis demonstrated a grade 5 splenic injury. Focused Assessment with Sonography in Trauma (FAST) exam was positive for blood in Morrison's pouch. W.S. was evaluated by the trauma team and deemed medically unstable and required immediate emergent surgery for unstable intra-abdominal bleed secondary to splenic laceration.

20. W.S. was taken emergently to the operating room with preoperative diagnosis of ruptured spleen with hemorrhagic shock and massive hemoperitoneum. Surgical procedures performed were exploratory laparotomy and open splenectomy. He was noted to have a three liter pneumoperitoneum with spleen in multiple pieces with some of them free-floating. Blood products received intraoperatively included five units of packed red blood cells and two units of fresh frozen plasma ("FFP"). Following surgery, he was directly admitted to the Intensive Care Unit ("ICU").

21. Upon arrival to the ICU, W.S. was intubated and mechanically ventilated. He was sedated with a Fentanyl IV drip and Propofol IV drip. ICU vital signs and neurological checks were initiated. He received IV fluids. Intermittent pneumatic compression devices were applied to lower extremities bilaterally for deep vein thrombosis prophylaxis. A sling was placed on his left arm secondary to left scapular fracture. W.S. was extubated, but he required

continued supplemental oxygen per nasal cannula. Fentanyl IV and Propofol IV were discontinued. He was encouraged to use incentive spirometry hourly while awake.

22. Once stabilized in the ICU, W.S. was transferred to a step down unit. Foley catheter was discontinued. Diet and activity were advanced as tolerated. He was evaluated and treated by physical therapy and occupational therapy. Pain and nausea were managed with Oxycodone, Hydrocodone, Dilaudid, Zofran, Reglan, Toradol, Tylenol, and Benadryl. He was eventually weaned to room air.

23. On October 9, 2014, W.S. was deemed medically stable for discharge to home.

24. This presentation to the Hospital's Emergency Department and subsequent inpatient hospitalization was medically necessary to assess, evaluate, and stabilize W.S.'s traumatic injuries. The absence of immediate medical attention could have placed his health in jeopardy as he was critically ill and bleeding internally. In addition, he was a trauma patient transported to the ED by EMS and unable to direct his care to a preferred provider, as he was confused and was neurologically impaired with a Glasgow Coma score of 14. His treatment provided in the ED setting was appropriate, as he received adequate evaluation per EMTALA guidelines and received appropriate and correct medical treatment. In the opinion of the greeting physician, this inpatient hospitalization was appropriate, felt medically necessary, and consistent with the best standards of medical practice.

25. The total amount of Plaintiff's Billed Charges for the treatment at the Hospital on the Dates of Service were $56,927.00 ("Billed Charges").

**B. Claims and Claim Processing**

26. The Hospital submitted a claim to the Defendants and/or their agents in a timely manner for W.S.'s treatment.

27. The Defendants paid $26,367.19 (approximately 46% of the total charges) to the Hospital for this claim.

28. The Defendants and/or their agents partially denied this claim based on its assertion that the services were provided out of network and exceeded usual, customary, and reasonable costs.

29. The Plaintiff and IHC were engaged in written and oral communications with the Defendants and/or their agents for several years.

30. Plaintiff's litigation counsel, Ms. Marcie E. Schaap, sent a final appeal letter to the Defendants and/or their agents on September 6, 2017.

31. All of Plaintiff's communications with the Defendants and their agents, including its appeals, were timely.

32. The parties have communicated with the Defendants and/or their agents many times by phone as set forth in the electronic and written records kept by the Plaintiff of the communications it has had with the Defendants during the appeal process.

33. A copy of the Plaintiff's communication records was sent to the Defendants and/or their agents prior to this litigation being filed.

34. The Defendants have not paid the Plaintiff for the treatment.

35. A balance of $30,559.81 is still due to W.S. for services provided by the Hospital.

//

//

<u>**FIRST CAUSE OF ACTION**</u>
(Recovery of Plan Benefits Under 29 U.S.C. §1132(a)(1)(B))

36. Plaintiff realleges and incorporates by reference all paragraphs of this Complaint as though fully stated herein.

37. The Plaintiff has submitted all proof necessary to the Defendants and/or their agents to support his claims for payment.

38. The Defendants have failed to provide evidence to the Plaintiff to support their basis for denial.

39. The Defendants have not fully reviewed or investigated all information sent to it by the Plaintiff and/or IHC, or available to it, which has caused the Defendants to deny a large portion of this claim.

40. The Defendants have failed to bear their burden of proof that an exclusion or requirement in the Plan Document supports their denial of a large portion of the claim for W.S.'s treatment.

41. The Defendants failed to offer the Plaintiff a "full and fair review" as required by ERISA.

42. The Defendants failed to offer the Plaintiff "higher than marketplace quality standards," as required by ERISA. <u>MetLife v. Glenn</u>, 554 U.S. 105, 128 S.Ct. 2343, 171 L.Ed.2d 299 (2008).

43. The Defendants failed to pay for these emergency services at an in-patient level as required by 45 C.F.R. §147.138(b).

44. The actions of the Defendants and/or their agents, as outlined above, are a violation of ERISA, a breach of fiduciary duty, and a breach of the terms and provisions of the Plan.

45. The actions of the Defendants and/or their agents have caused damage to the Plaintiff in the form of a denial of ERISA medical benefits.

46. The Defendants are responsible to pay the balance of the claim for Plaintiff's medical expenses, and to pay Plaintiff's attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g), plus pre- and post-judgment interest to the date of payment of the unpaid benefits.

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

1. For judgment on Plaintiff's First Cause of Action in favor of the Plaintiff and against the Defendants pursuant to 29 U.S.C. §1132(a)(1)(B), for unpaid medical benefits in the amount of $30,559.81 for attorneys' fees and costs incurred pursuant to 29 U.S.C. §1132(g), and for an award of pre- and post-judgment interest to the date of the payment of the interest claimed.

DATED this 7th day of March, 2018.

MARCIE E. SCHAAP, ATTORNEY AT LAW, P.C.
By: /s/ Joseph D. Amadon
Joseph D. Amadon
Marcie E. Schaap
Attorneys for Plaintiff